U.S. DIST. COURT EAST DIST. WISC
RECEIVED
SEP -9 2016
AT______O'CLOCK______M
JON W. SANFILIPPO, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 14-CR-246

DEJUAN M. MAYFIELD,
a/k/a "D,"

Defendant.

# PLEA AGREEMENT

1. The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Gail J. Hoffman and Matthew D. Krueger, Assistant United States Attorneys, and the defendant, Dejuan M. Mayfield, individually and by attorney Daniel Sanders, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

2. The defendant has been charged in a three-count superseding indictment, which alleges violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846, and Title 18, United States Code, Section 2. The defendant has also been charged in a one-count information which alleges a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, and Title 18, United States Code, Section 2.

3. The defendant has read and fully understands the charges contained in the superseding indictment and information. He fully understands the nature and elements of the

crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court

5. The defendant voluntarily agrees to plead guilty to the following as set forth as follows:

***THE UNITED STATES ATTORNEY CHARGES:***

*1. Beginning by at least May 2013, and continuing until on or about February 13, 2014, in the State and Eastern District of Wisconsin and elsewhere,*

***DEJUAN M. MAYFIELD***

*knowingly and intentionally conspired with persons known and unknown to possess with the intent to distribute and to distribute a mixture and substance containing a detectable amount of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).*

*2. The amount involved in the conspiracy attributable to the defendant as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to him is a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance.*

*All in violation of Title 21, United States Code, Sections 846, and 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.*

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

On November 2, 2013, at approximately 3:26 p.m. a City of West Allis police officer responded to 22xx S. 93rd St., West Allis, Wisconsin, in regard to an investigation involving heroin distribution to S.J. subsequently determined to involve co-conspirator Ronald Pollak.

The detective later identified Pollak's telephone number, 414-552-xxxx, as the number S.J. called to arrange a heroin purchase on November 2, 2013. Subsequently, in January and February 2014, Pollak delivered heroin during two controlled buys arranged by the West Allis Police Department. During both controlled buys, a West Allis police officer contacted Pollak via telephone number 414-552-xxxx in order to arrange the heroin transactions. On February 12, 2014, Pollak was subsequently arrested and was found in possession of a cellular telephone. Pollak provided consent for West Allis Police to search the telephone. A search of this phone revealed Pollak's contacts, and text messages that had not been deleted.

On February 12, 2014, a City of West Allis Police Department Detective conducted a Mirandized interview of Pollak, who stated that he had been involved with heroin dealing for about 1.5 years, and was addicted to heroin himself. Pollak obtained heroin from heroin dealers and he would then sell heroin to make money. Pollak profited by getting money, gas money, or extra heroin. He would charge his customers an extra $10 and then pinch a little bit of their bag (heroin) as well. In the last year and a half, he engaged in at least three deals per day. The largest individual deal was for 16 grams and the smallest was for a "dub" of heroin. His median deal was for approximately a gram. Pollak also admitted to selling S.J. heroin on November 2, 2013.

During the course of the conspiracy, Pollak stated that he obtained heroin from a dealer named "D" in Waukegan, Illinois, who had "really good stuff." Everyone wanted "D's" heroin because it was the best heroin around. At the time of the interview, Pollak estimated that he had purchased and/or facilitated deals adding up to at least 100 grams of heroin from "D" during the course of the conspiracy. Once Pollak arranged for "D" to provide an ounce of heroin to another person. Pollak identified "D's" telephone number as 773-331-xxxx. Pollak further related that he owed "D" money for heroin that "D" had fronted to Pollak, and therefore Pollak had not been in recent contact with "D."

Case agents reviewed Pollak's contacts and found a listing for "D" with corresponding numbers of 773-331-xxxx, and 847-529-xxxx. When presented with a photographic array by law enforcement, Pollak identified Dejuan Mayfield as "D."

Pollak further related that he first met Mayfield through J.M. when J.M. purchased heroin from Mayfield that Pollak bought from J.M. On or about May 2013, Pollak was able to deal with Mayfield directly after J.M. provided Mayfield's number to Pollak. Shortly thereafter, Mayfield became comfortable with Pollak, and Mayfield fronted heroin to Pollak. Mayfield also coached Pollak on the ways of making more money from the heroin Mayfield fronted. J.M., in an interviewed, identified Mayfield from a photographic array as the individual from whom he purchased heroin, and from whom Pollak subsequently purchased heroin.

At times, Pollak drove by himself or with others, including D.M., who sold heroin for Pollak that Pollak obtained from Mayfield. Sometimes a group of heroin users would pool together their money, drive together in Pollak's vehicle to the Waukegan area with Pollak when

he purchased heroin from Mayfield, and then immediately use the heroin that Mayfield sold Pollak. The more heroin that Pollak purchased, the more heroin Mayfield fronted to Pollak.

Under the direction of law enforcement, on February 13, 2014, Pollak placed recorded calls to Mayfield in order to arrange a controlled heroin transaction. During these calls, Pollak asked for his "usual seven," and Mayfield referenced the money that Pollak owed Mayfield. Pollak stated that "seven" referred to seven grams of heroin.

Mayfield told Pollak to meet him. Law enforcement drove Pollak to the pre-determined buy location. After slowly driving around the area and surveilling the meeting location, Mayfield approached the empty undercover vehicle. Officers moved in to take Mayfield into custody; however, Mayfield fled on foot. Law enforcement gave chase and arrested Mayfield. On his person, Mayfield possessed over $3,000 in cash, and, in part, two cellular telephones associated with the above-referenced numbers in Pollak's list of contacts. Heroin was never recovered; however, officers located a gram scale testing positive for heroin and cocaine residue.

During the course of the investigation, law enforcement authorities obtained search warrants for Mayfield's phones. A search of 773-331-xxxx revealed drug related texts between "Ron" at Pollak's phone number and Mayfield which Pollak subsequently identified. One of the texts referenced the money owed to Mayfield by Pollak: "You bogus dude I help u out and this wat u do I got kids to feed man smh."

Pollak stated to law enforcement that during the course of the investigation, other individuals who bought heroin from Pollak were also interviewed. Several of these individuals positively identified Mayfield from photograph arrays as the person who sold Pollak heroin in the Waukegan area because they observed the transactions. Pollak and these other individuals further related that the transactions normally occurred in one of three areas; Round Lake, Zion or Waukegan and followed the same pattern. Several also indicated that they were aware that Mayfield fronted heroin to Pollak.

Cell site information was obtained via search warrant for Mayfield's above-identified phones for November 1st and 2nd, 2013. Cell site analysis revealed that on November 1, 2013, the number associated with Pollak traveled to the Waukegan area and was located in the same vicinity as the cell phone numbers associated with Mayfield on two occasions during this 24 hour period. On November 2, 2013, the phones again were located in the same vicinity in Waukegan once. Further telephone analysis revealed that from September 14, 2013 through February 13, 2014, Pollak's phone was in contact with Mayfield's phones by either text or call 764 times. Approximately 90 percent of the calls lasted under one minute. Case agents are aware that drug related calls are generally short in duration.

Based upon all case related information, the government is able to establish that during the course of the conspiracy alleged in the Information, Mayfield distributed at least 100 grams of a mixture and substance containing heroin, but less than 400 grams.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: twenty years and $1,000,000. The count also carries a mandatory special assessment of $100, and a term of three years to life of supervised release.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney, including any possibility that the defendant may qualify as a career offender under the sentencing guidelines.

## DISMISSAL OF THE SUPERSEDING INDICTMENT

9. The government agrees to move to dismiss the superseding indictment at the time of sentencing.

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge of possession with intent to distribute heroin as set forth in the Information, the government must prove each of the following propositions beyond a reasonable doubt:

First, the conspiracy as alleged in the information exited; and
Second, the defendant joined the conspiracy with intent to further the conspiracy.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

17. The parties acknowledge and understand that the government will recommend to the sentencing court that the relevant conduct attributable to the defendant is at least 100 grams but less than 400 grams of a mixture and substance containing heroin, a Schedule I controlled substance.

## Base Offense Level

18. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the Information is 24 under Sentencing Guidelines Manual § 2D1.1(c)(8).

## Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but

not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

22. The parties agree to jointly recommend to the sentencing court that the defendant be sentenced to four years' confinement.

**Court's Determinations at Sentencing**

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

**FINANCIAL MATTERS**

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the

judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

**Special Assessment**

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

**DEFENDANT'S WAIVER OF RIGHTS**

28. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

32. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

36. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

37. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

38. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9/9/16

DEJUAN M. MAYFIELD
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 9/9/16

DANIEL H. SANDERS
Attorney for Defendant

For the United States of America:

Date: 9/9/16

GREGORY J. HAANSTAD
United States Attorney

Date: 9/9/16

GAIL J. HOFFMAN
Assistant United States Attorney

Date: 9/9/16

MATTHEW D. KRUEGER
Assistant United States Attorney